UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WAYNE ROGERS, :
        Plaintiff, :
 :
v. : Case No. 3:21-cv-1710 (OAW)
 :
JOANNE CUSSON, et al., :
        Defendants. :

**RULING ON MOTION FOR SUMMARY JUDGMENT (ECF No. 35)**

Self-represented plaintiff, Wayne Rogers, brought this action asserting Fourth and Fourteenth Amendment claims for deliberate indifference to his medical needs against defendant Nurses JoAnne Cusson and Ken Bradley.[1] Following initial review, only the Fourteenth Amendment claims remain. *See* Initial Review Order, ECF No. 8. Before the court is Defendants' Motion for Summary Judgment. For the following reasons, the motion is **GRANTED in part**.

I. **STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's*

---

[1] Plaintiff incorrectly spelled Nurse Bradley's name in the Complaint. The court uses the correct spelling and asks the Clerk to correct the spelling on the docket.

1

*Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).  In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's papers liberally and to interpret them "to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790

(2d Cir. 1994)); "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II. FACTS[2]

Plaintiff was admitted to the custody of the Connecticut Department of Correction ("DOC") on September 7, 2021. Defendants' Local Rule 56(a)1 Statement, ECF No. 35-2, ¶ 2 ("Defs.' 56 Stmt"). He was confined at Hartford Correctional Center ("HCC") as a pretrial detainee from September 7, 2021, until March 18, 2022. *Id.* ¶ 4.

Defendants are nurses employed by DOC. *Id.* ¶ 35. They are neither licensed to order treatment nor accountable for doing so. *Id.* ¶ 36. Nurses are not assigned to individual inmates; they provide care on an as-needed basis during their shifts. *Id.* ¶ 37.

On September 7, 2021, Nurse Bradley medically screened inmates entering HCC. *Id.* ¶ 39. Plaintiff reported two recent motor vehicle accidents and stated he had been treated at a hospital after each one. *Id.* ¶ 40. Nurse Bradley noted this in Plaintiff's health records and instructed him how to access inmate health services at HCC. *Id.* ¶ 41.

Plaintiff entered the facility with an assistive device, so Nurse Bradley determined that Plaintiff would have difficulty climbing, and provided him with a bottom bunk pass. *Id.* ¶ 42. The parties disagree whether Plaintiff complained of pain, had difficulty moving or sitting upright, had a sling or back brace, or requested a DOC-approved sling or back brace. *Id.* ¶¶ 43-45 & Plaintiff's Local Rule 56(a)2 Statement (ECF No. 42-2) ¶¶ 43-45

---

[2] The facts are taken from the parties' Local Rule 56(a) Statements and exhibits.

("Pl's. 56 Stmt").

Nurse Bradley also encountered Plaintiff while distributing medication, and when assisting with a restrictive housing placement. Defs.' 56 Stmt ¶ 47. Again, the parties disagree whether Plaintiff requested pain management, a sling, or a back brace. *Id.* & Pl.'s 56 Stmt ¶ 47.

Between November 2021 and June 2022, Nurse Cusson was the Health Services Administrative Remedies Coordinator ("HSARC") at HCC. Defs.' 56 Stmt ¶ 49. In addition to her regular nursing duties, she collected and responded to medical grievances and maintained grievance records. *Id.* ¶ 50. Nurse Cusson had only one encounter with Plaintiff during the relevant period, when she evaluated Plaintiff for placement in restrictive housing. *Id.* ¶ 51. During this encounter, Plaintiff did not mention back, arm or shoulder pain and did not refer to a missing sling. *Id.* ¶ 52.

On November 12, 2021, Plaintiff filed a Level 1 medical grievance that he had dated November 4, 2021. *Id.* ¶ 18. Nurse Cusson denied the grievance because Plaintiff had made no complaints of back pain or his need of a back brace and sling at his last two medical appointments, and because he had failed to attach evidence of informal resolution attempts. *Id.* ¶¶ 25-28.

### III. **DISCUSSION**

Defendants move for summary judgment on three grounds: (1) Plaintiff failed to timely exhaust his administrative remedies, (2) Plaintiff's claim fails as a matter of law, and (3) Defendants are protected by qualified immunity. They also argue that Plaintiff's

4

request for injunctive relief (seeking proper medical care, proper medication, and a double mattress) is barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

### A. Exhaustion of Administrative Remedies

Defendants first argue that Plaintiff failed to timely exhaust his administrative remedies before filing this action. The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion of administrative remedies permits prison officials to address complaints before being subjected to suit and reduce litigation if the complaint can be resolved satisfactorily within the administrative process. *See Jones v. Bock*, 549 U.S. 199, 219 (2007).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court of the United States requires proper exhaustion of administrative remedies and has held that this requirement is not met when a grievance is not filed in accordance with deadlines established by the grievance policy. *See Jones*, 549 U.S. at 217-18 (citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006)). Special circumstances will not relieve an inmate of his obligation to adhere

5

to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 578 U.S. 632, 642 (2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants bear the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defendants establish that administrative remedies were not exhausted before the inmate commenced that action, the plaintiff must then show that the administrative remedy procedures were not available to him under the *Ross* standard. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability"). An administrative remedy is unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (citation omitted).

The Supreme Court has held that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Further, "[i]t is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements." *Rawls v.*

6

*Rosenfield*, No. 9:16-CV00582(LEK/CFH), 2017 WL 7050648, at *7 (N.D.N.Y. Nov. 28. 2017), *report and recommendation adopted*, 2018 WL 542249 (N.D.N.Y. Jan. 23, 2018); *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (regardless whether informal complaints put prison officials on notice of inmate's grievance "in a substantive sense," inmate must still comply with procedural requirements for exhaustion); *Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (agreeing with district court that plaintiff did not properly exhaust administrative remedies because informal letters plaintiff sent to Connecticut Department of Correction officials did not conform to established administrative remedy procedures).

Exhaustion of claims regarding medical needs is governed by Department of Correction Administrative Directive 8.9. *See* Defendants' Motion for Summary Judgment, Ex. B Attachment 1, ECF No. 35-5 at 11-19 ("Dir. 8.9"). There are two types of health services administrative remedies. One is the diagnosis and treatment remedy, which seeks "review of diagnosis or treatment decision made by a physician, psychiatrist, psychologist, advanced practice registered nurse (APRN), physician assistant (PA), physician assistant-certified (PA-C), or dentist . . . ." Dir. 8.9(6)(a)(i). The other is the administrative issue remedy, which seeks "review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." Dir. 8.9(6)(a)(ii).

The relevant procedures are as follows. Upon receipt, the administrative remedy is reviewed for compliance with the provisions in Directive 8.9. If the request is not in compliance, it is rejected. *See* Dir. 8.9(6)(b)(i). Before filing a Health Services

Administrative Remedy, the inmate must attempt informal resolution, *see id.* § 6(b)(ii)(1), either verbally with the appropriate staff member, *see id.* § 6(b)(ii)(2), or, if that is not fruitful, by filing a written request on form CN 9601 with the appropriate staff member, *see id.* §§ 6(b)(ii)(3-4).  Within fifteen business days after receipt of the written request, the inmate will be provided with a response.  *See id.* § 6(b)(ii)(7).  If the inmate is not satisfied with the response to the written request, he may file a Health Services Administrative Remedy request, *see id.* § 6(b)(iii)(1), within thirty calendar days of the occurrence or discovery of the cause or reason for such request.  *See id.* § 6(b)(iii)(4).

Upon receipt of a diagnosis and treatment remedy, the HSARC consults the provider who decided what action (if any) to take.  *See* Dir. 8.9(6)(c)(i)(2)(a).  If the provider decides that the existing diagnosis or treatment is appropriate, the remedy is denied and may not be appealed.  *See id.*  If the provider decides that further evaluation is needed, she may schedule a health services review appointment.  *See id.* § 6(c)(i)(2)(b).

The Level 1 decision on an administrative issue remedy request is made by the HSARC in consultation with appropriate health care supervisors.  *See* Dir. 8.9(6)(c)(ii)(1).  First the request is reviewed for compliance with the provisions of Directive 8.9.  *See id.* § 6(c)(ii)(2).  If it is in compliance, it will be processed.  If it is not in compliance, it will be rejected and, if correction is possible, the inmate will be afforded five days to correct the defect and resubmit the request.  *See id.* § 6(c)(ii)(2)(a)(i).

Health Services Administrative Remedies requests are either: rejected, denied, upheld, upheld in part, or withdrawn.  *See id.* § 4(m)(i).  They are denied if they lack merit.

*See id.* § 3(d). They are rejected if they "[do] not meet the procedural requirements of the particular remedy." *See id.* § 3(k).

Defendants argue that Plaintiff failed to properly exhaust his administrative remedies because his request was untimely. Proper exhaustion required Plaintiff to comply with all procedural rules for filing an administrative remedy request including complying with filing deadlines. "Thus, 'untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements.'" *Pena v. Semple*, No. 3:19cv124(KAD), 2021 WL 311278, at *9 (D. Conn. Jan. 29, 2021) (quoting *Ruggerio v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006)). Plaintiff alleges that his back brace and sling were taken on September 7, 2022, but he did not file his grievance (seeking pain medication and return of the brace) until November 2022. Thus, Defendants are correct that Plaintiff's grievance was untimely.

However, the United States Court of Appeals for the Second Circuit has held that "the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority." *Hill v. Curcione*, 657 F.3d 116, 125 (2d Cir. 2011). Plaintiff filed his grievance as a diagnosis and treatment remedy request. *See* Plaintiff's Memorandum in Opposition, Ex. 2, ECF No. 42-5 at 3 ("Pl.'s Mem."). As the HSARC, Defendant Cusson could have rejected the grievance as improper because diagnosis and treatment requests only may be asserted against doctors, APRN's or PA's, not against nurses. She did not do so. Instead, she appears to have construed the request as an administrative issue remedy request complaining about improper actions by Nurse Bradley.

9

HSARC Cusson could have rejected it as untimely but did not do so. She also could have rejected it for failure to attach evidence of informal resolution attempts. Although she noted the absence of this evidence, she did not reject the request. Instead, HSARC Cusson reviewed Plaintiff's medical records and denied the request. *See* Defs.' Mem. Ex. B, Attachment 3, ECF No. 35-5 at 23. Directive 8.9 distinguishes between a rejection and a denial and specifically defines a denial as a consideration of the merits of the request. Additionally, HSARC Cusson checked the box indicating that no appeal was available. *See id.* Thus, as HSARC Cusson was the appropriate person to decide an administrative issue remedy request, and because she decided it on the merits, the court finds that Plaintiff has satisfied the exhaustion requirement. As to this ground, Defendants' motion is denied.

### B. Deliberate Indifference to Medical Needs

To establish a claim for deliberate indifference to medical needs in violation of the Fourteenth Amendment, Plaintiff must establish that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and that "the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

The "serious medical need standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Id.*

10

Plaintiff alleges that he fractured vertebrae in June 2021 and refractured them in September 2021.  Pl.'s 56 Stmt ¶ 60a.  His medical records from Hartford Hospital appear contradictory.  Plaintiff was admitted and discharged from Hartford Hospital on September 4, 2021.  Pl.'s Mem. Ex. 4, ECF No. 42-7.  The assessment states that Plaintiff "presents with a left proximal humerus fracture involving the medial humeral head and spinous process fractures C6-T4 as well as a right transverse process fracture at L3." *Id*. at 4.

However, the medical record contains the following entry:

> OSSEOUS STRUCTURES: Redemonstration of fractures involving the spinous processes of C6-T4; similar compared to CT chest abdomen pelvis 06/25/2021.  Healing fracture of the right transverse process of the L3 vertebrae, seen on CT abdomen and pelvis 06/25/2021.  Mild compression deformity of L1.  Minimally displaced comminuted fracture of the medial aspect of the left humeral head.  No new fractures visualized.

*Id.* at 6.  A second entry reporting the findings of x-rays of the cervical spine, describes: "Redemonstration of spinous process fractures of C6 and C7.  There has been increased inferior displacement of the C6 fracture fragment when compared to prior cervical spine radiograph dated June 25, 2021."  *Id.* at 5.

The prefix "re" means again.  *See* https://www.merriam-webster.com/dictionary/re (last visited Oct. 5, 2023).  *See Pruitt v. Saul*, No. 3:19-CV-00383, 2019 WL 8109723, at *6 (S.D.W. Va. Sept. 25, 2019) ("An x-ray of Claimant's right knee dated July 18, 2017 showed redemonstration of fragmentation and/or ossification of the inferior patella and infrapatellar tendon that remained unchanged from previous examination."), *report and recommendation adopted*, 2020 WL 981678 (S.D.W. Va. Feb. 28, 2020).  Thus, the tests showed, again, the fracture from June 2021 and specifically indicated no new fractures.  In light of the language from the test results, it is not clear whether the assessment refers

11

to new fractures or the prior ones.  Also, neither party has presented evidence concerning whether, or how, a refracture would appear on an x-ray.  Thus, there is a genuine issue of fact whether Plaintiff suffered from a serious medical need, namely current fractures of his neck or back, in September 2021.

Regarding the second element, Plaintiff must show that "the defendant-official acted intentionally to impose the alleged condition or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Darnell*, 849 F.3d at 35.  Negligence, however, "does not, without more, engender a constitutional claim."  *Clay v. Kellmurray*, 465 Fed. Appx. 46, 47 (2d Cir. 2012) (quoting *Chance*, 143 F.3d at 703); *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.").

1. Nurse Bradley

Plaintiff contends that Nurse Bradley took his back brace and sling during intake and would not order a substitute that complied with DOC requirements.  He also alleges that, when he complained of pain during subsequent encounters, Nurse Bradley did not provide any medication to address his pain.  Nurse Bradley states that he did not take the brace or sling, and that Plaintiff never complained to him of pain.

The property inventory form completed at intake shows that Plaintiff arrived at HCC with a back brace and a neck brace.  *See* Pl.'s Mem. Ex. 3, ECF No. 42-6 at 2.  The property inventory form completed when Plaintiff was taken to restrictive housing on

12

October 14, 2021, shows that two medical neck braces were stored for the time he was so confined.  *See id.*; *see also* Department of Correction Administrative Directive 6.10(25) (describing the temporary storage of inmate property when inmate is placed in restrictive housing), found at www.portal.ct.gov/DOC/AD/AD-Chapter-6.  Thus, the evidence shows that Plaintiff's back brace was taken from him at some point between September 7, 2021, and October 14, 2021.  The evidence is contradictory on whether Nurse Bradley took the brace.  Thus, the motion for summary judgment is denied on the claim regarding taking the back brace.

Upon intake, Nurse Bradley referred Plaintiff to the MD sick call for his injuries and complaint of pain.  Pl.'s Mem. Ex. 4, Attachment B, ECF No. 42-7 at 21.  Although the copies of Plaintiff's medical records submitted with the motion for summary judgment shows that Dr. Ruiz approved the bottom bunk pass on September 20, 2021, *id.* at 26, Plaintiff was not seen for complaints of back or shoulder pain until February 1, 2022.  *Id.* at 111.

Again, the record evidence is contradictory.  Plaintiff submits copies of inmate requests he submitted to the medical unit in 2021 seeking treatment for back pain.  *See, e.g.*, Pl.'s Mem. Ex. 2, ECF No. 42-5 at 5 (September, 11, 2021 request - extreme back, neck, and left shoulder pain), 6 (October 15, 2021 request - back pain "hurts really bad"), 21 (September 9, 2021 request - back pain), 22 (September 17, 2021 request - back pain and constipation), 23 (October 12, 2021 request - back and shoulder pain, took braces), 27 (November 1, 2021 request - back and shoulder pain); 28 (November 9, 2021 request - back pain and cannot sleep through night), and 32 (January 7, 2022 request to medical

13

supervisor - requesting sick call for three weeks but not seen for complaints of serious back issues from fractured and refractured back). The medical records, however, appear contradictory.[3]

The parties' affidavits are contradictory as to whether Plaintiff requested treatment for pain from Nurse Bradley, thus the summary judgment motion is denied on this claim. Additionally, until resolution of whether Plaintiff's constitutional rights were violated, the court cannot determine whether Plaintiff's request for injunctive relief is warranted.

### 2. HSARC Cusson

During his deposition, Plaintiff clarified that his claim against HSARC Cusson concerns only her treatment of his grievances. He claims that, by denying his grievances, she denied him medical care. *See* Defs.' Mem. Ex. E, Depo. Tr., ECF No. 3-8 at 5.

Plaintiff's claims relating to HSARC Cusson's treatment of his grievances fail. There is no federal constitutional right to have a grievance upheld. *See, e.g., Schlosser v. Manuel*, No. 3:19-cv-1444(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed." (citing cases)); *Cabassa v. Ostheimer*, 162 F. Supp. 3d 60, 63 (D. Conn. 2016) (dismissing all claims regarding effective grievance procedures or responses to grievances).

Plaintiff has submitted copies of five grievances decided by HSARC Cusson. She denied three of them (one of which is illegible) and rejected two. She reviewed all but one of them after Plaintiff commenced this action. The denial or rejection of a grievance

---

[3] Plaintiff filed supporting documentation under seal but did not also docket a redacted copy, so the court, in respecting Plaintiff's intended medical privacy, declines additional articulation.

does not amount to a denial of medical care.  In *Crosby v. Petermann*, No. 18-CV-9470(JGK), 2020 WL 1434932 (S.D.N.Y. Mar. 24, 2020), the court held that a defendant not directly involved in providing medical care to the plaintiff could not be held liable for his response to a grievance that was based on a review of the medical records.  *Id.* at *10.  The attached grievances show that HSARC Cusson's decisions were based on a review of Plaintiff's medical records.  Thus, even if her assessment was incorrect, at most it would be negligence (which is not cognizable under § 1983).  Defendants' motion for summary judgment is granted as to the claims against HSARC Cusson.

### C. Qualified Immunity

Finally, Defendants argue that they are protected by qualified immunity.  The court only considers this argument as to Nurse Bradley (having granted summary judgment in favor of defendant Cusson).

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions."  *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)).  "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'"  *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

Two conditions must be met to deny an official the protection of qualified immunity. First, the facts alleged or shown by the plaintiff must state a statutory or constitutional right that was violated by the official, and second, the right must have been clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). However, Federal Rule of Civil Procedure 56(a) provides that summary judgment should enter only where there is no dispute as to material facts. This requirement applies whether the motion for summary judgment is based on the merits or on qualified immunity. *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998).

Defendants' arguments that Plaintiff had no clearly-established constitutional right to a neck or back brace or to medication for back and neck pain, and that their actions were reasonable, rely on their claim that Plaintiff failed to show that he had a serious medical need. As discussed above, the record shows disputed facts regarding whether Plaintiff had refractured his vertebrae in September 2021, and whether he sought treatment for pain from Nurse Bradley. In light of these disputed facts, the court cannot, at this time, determine whether Nurse Bradley is entitled to qualified immunity. Defendants' motion for summary judgment is denied on this ground.

### IV. <u>CONCLUSION</u>

Defendants' Motion for Summary Judgment **[ECF No. 35]** is **GRANTED** as to the claims against HSARC Cusson and is **DENIED** as to the claims against Nurse Bradley.

Plaintiff's motion to defer ruling on the motion for summary judgment **[ECF No. 48]** is **DENIED**.

Plaintiff's motion for a status conference **[ECF No. 50]** is **DENIED**.

Within twenty-one (21) days from this ruling's filing date, the parties should confer and provide notice to the court of whether a settlement conference with a United States Magistrate Judge would assist in resolution of this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 1st day of December, 2023.

/s/
Omar A. Williams
United States District Judge